**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT NEW JERSEY**

| | |
|---|---|
| DONALD KISSELBACH, *individually, and on behalf of all others similarly situated*, Plaintiff, v. QUEST DIAGNOSTICS INCORPORATED, Defendant. | Case No. _________ **CLASS ACTION COMPLAINT** JURY TRIAL DEMANDED |

Plaintiff Donald Kisselbach ("Plaintiff"), by and through his undersigned counsel, on behalf of himself and a class of all other similarly situated persons, files this Class Action Complaint against Quest Diagnostics Incorporated ("Defendant") and its present, former, or future direct and indirect parent companies, subsidiaries, affiliates, agents, and/or other related entities. Plaintiff's allegations are made based upon personal knowledge, his own acts, and upon information and belief and investigation of counsel, as to all other matters.

## I. NATURE OF THE ACTION

1. Plaintiff brings this class action against Defendant for its failure to properly secure Plaintiff's and Class Members' personally identifiable information ("PII") and protected health information ("PHI") (collectively, "Private

Information") that was compromised as a result of a data breach (the "Data Breach").

2. Plaintiff has been, and continues to be, harmed as a result of Defendant's failure to properly secure and safeguard Plaintiff's highly valuable Private Information.

3. Defendant is a clinical laboratory and diagnostic information services company.[1]

4. In the course of its regular business operations, Defendant collects and stores a substantial amount of Private Information. Defendant has a resulting duty to ensure the Private Information it maintains is safeguarded from unauthorized disclosure.

5. Plaintiff and the individuals impacted by the Data Breach provided their Private Information to Defendant either directly or indirectly in connection with the services Defendant provides.

6. Upon information and belief, Defendant recently experienced a significant cybersecurity incident involving unauthorized access to its information technology network (the "Data Breach"). The Data Breach resulted in the

---

1 Quest Diagnostics, About Us, https://www.questdiagnostics.com/our-company/about-us.

compromise and exfiltration of an extraordinary volume of highly sensitive Private Information belonging to Plaintiff and Class members.

7. Upon information and belief, cybercriminals were able to breach Defendant's systems because Defendant failed to adequately train its employees on cybersecurity, failed to adequately monitor its agents, contractors, vendors, and suppliers in handling and securing the Private Information of Plaintiff and Class members, and failed to maintain reasonable security safeguards or protocols to protect the Plaintiff's and Class's Private Information, rendering it an easy target for cybercriminals.

8. Despite having first learned of the Breach on October 21, 2026, Defendant has failed to promptly notify Plaintiff or Class members about the Data Breach.

9. Upon information and belief, the Data Breach was the direct result of Defendant's failure to implement and maintain reasonable cybersecurity safeguards, including adequate employee training, access controls, monitoring systems, and protections against social engineering attacks.

10. As a direct and proximate result of the Data Breach, Plaintiff and Class members have suffered actual and present injuries, including but not limited to: (a) present, certainly impending, and continuing threats of identity theft crimes, fraud, scams, and other misuses of their Private Information; (b) diminution of value of

their Private Information; (c) loss of benefit of the bargain (price premium damages); (d) loss of value of privacy and confidentiality of the compromised Private Information; (e) illegal sales of the compromised Private Information; (f) mitigation expenses and time spent responding to and remedying the effects of the Data Breach; (g) identity theft insurance costs; (h) “out of pocket” costs incurred due to actual identity theft; (i) credit freezes/unfreezes; (j) expense and time spent on initiating fraud alerts and contacting third parties; (k) decreased credit scores; (l) lost work time; and (m) anxiety, annoyance, and nuisance; (n) continued risk to their Private Information, which remains in Defendant’s possession and is subject to further breaches so long as Defendant fails to undertake appropriate and adequate measures to protect Plaintiff’s and Class members’ Private Information.

11. Plaintiff and Class members face a significantly increased and certainly impending risk of fraud, extortion, identity theft, and other harms caused by the unauthorized disclosure of their Private Information—risks which may last for the rest of their lives.

12. Consequently, Plaintiff and Class members must devote substantially more time, money, and energy to protect themselves, to the extent possible, from these crimes.

13. Plaintiff brings claims for negligence, unjust enrichment, and breach of implied contract seeking damages and injunctive relief, including the adoption

of reasonably sufficient data security practices to safeguard the Private Information still in Defendant's possession in order to prevent incidents like the Data Breach from reoccurring in the future.

## II. PARTIES

14. Plaintiff Donald Kisselbach, at all relevant times, is a resident of the State of Louisiana, where he intends to remain.

15. Defendant is a Delaware corporation with its principal place of business located at 500 Plaza Drive, Secaucus, New Jersey 07094.

## III. JURISDICTION AND VENUE

16. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because (a) the aggregate amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs (b) the action is a class action (c) there are Class members who are diverse from Defendant, namely Plaintiff a citizen of Louisiana, and (d) there are more than 100 Class members.

17. 13. This Court has personal jurisdiction over Defendant because Defendant maintains its principal place of business in this District.

18. 14. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and because Defendant resides in this District.

## IV. FACTUAL ALLEGATIONS

### A. Defendant's Business

19. Defendant is a clinical laboratory and diagnostic information services

company.[2]

20. In the ordinary course of its business, Defendant collects and maintains the Private Information belonging to the current and former customers that is then, upon information and belief, stored on Defendant's computer systems or systems that Defendant controls.

21. Upon information and belief, Defendant promised to maintain the confidentiality of Plaintiff's and Class members' Private Information, comply with applicable federal and state laws and regulations, and refrain from using or disclosing such information for non-essential purposes.

22. Defendant acknowledges that it is required by law to maintain the privacy of Plaintiff's and Class members' Private Information.[3]

23. Defendant represents in its Privacy Statement that it has "adopted physical, technical and administrative measures that are designed to prevent unauthorized access or disclosure, maintain data accuracy, and ensure appropriate use of Personal Information."[4]

---

2 Quest Diagnostics, About Us, https://www.questdiagnostics.com/our-company/about-us.

3 *HIPAA notice of Privacy Practices*, Quest Diagnostics Incorporated, https://www.questdiagnostics.com/our-company/privacy/notice-of-privacy-practicesa (last visited Oct. 26, 2026).

4 *Privacy*, Quest Diagnostics Incorporated, https://www.questdiagnostics.com/our-company/privacy (last visited Oct. 26, 2026).

24. Upon information and belief, Plaintiff and Class members are individuals who provided their Private Information to Defendant either directly or indirectly.

25. Plaintiff and Class members have taken reasonable steps to maintain the confidentiality of their Private Information. Plaintiff and Class members relied on the sophistication of Defendant to keep their Private Information confidential and securely maintained, to use this information for necessary purposes only, and to make only authorized disclosures of this information. Plaintiff and Class members value the confidentiality of their Private Information and demand security to safeguard their Private Information.

26. Defendant had a duty to adopt reasonable measures to protect the Private Information of Plaintiff and Class members from involuntary disclosure to third parties. Defendant had a legal duty to keep this Private Information safe and confidential.

27. Defendant had obligations created by the Federal Trade Commission Act ("FTC Act"), various federal and state statutes, contract, industry standards to keep such Private Information confidential and to protect it from unauthorized access and disclosure.

28. Thus, Plaintiff and Class members had a reasonable expectation that Defendant would comply with its obligations related to Plaintiff's and Class

members' Private Information. Defendant owed Plaintiff and Class members a duty to provide reasonable security, consistent with industry standards and requirements, and to ensure that its computer systems, networks, and protocols adequately protected their Private Information.

29. By obtaining, collecting, using, and deriving a benefit from Plaintiff's and Class members' Private Information, Defendant assumed legal and equitable duties and knew or should have known that it was responsible for protecting Plaintiff's and Class members' Private Information from disclosure.

**B. The Data Breach**

30. Upon information and belief, Defendant recently experienced a significant cybersecurity incident involving unauthorized access to its information technology network (the "Data Breach"). The Data Breach resulted in the compromise and exfiltration of an extraordinary volume of highly sensitive Private Information entrusted to Defendant, either directly or indirectly, by Plaintiff and Class members.

31. On October 21, 2026, Defendant learned of unauthorized access to its Quanum LSM system, which certain clients of Defendant use to place test orders, receive and look up results of their patients.[5]

[5] *Form 8-K*, Quest Diagnostics Incorporated, United States Securities and Exchange Commission (Oct. 21, 2026), *available at*

32. In response, Defendant launched an investigation to determine the nature and scope of the Data Breach and determined that personal information and patient records were affected.[6]

33. Currently, the precise number of persons injured is unclear. But upon information and belief, the size of the putative Class can be ascertained from information in Defendant's custody and control. And upon information and belief, the putative Class is over one hundred members—as it includes its consumers.

34. Despite having first learned of the Breach on October 21, 2026, Defendant has failed to promptly notify Plaintiff or Class members about the Data Breach.

35. Upon information and belief, despite its duties to safeguard the sensitive information entrusted to it and any representations or commitments it made concerning the security of that information, Defendant failed to implement and maintain reasonable and appropriate safeguards to protect Plaintiff's and Class members' information from unauthorized access and acquisition.

---

https://www.sec.gov/ix?doc=/Archives/edgar/data/1022079/000094787126000941/ss6979200_8k.htm.

[6] Quest Diagnostics, An update on an incident involving one of our systems (Oct. 23, 2026), *available at* https://www.questdiagnostics.com/links/quanum-notice.

36. Defendant's failure to prevent or detect the unauthorized access permitted cybercriminals to obtain and exfiltrate highly sensitive identification information belonging to Plaintiff and Class members.

37. The extraordinary volume and sensitivity of the information allegedly accessed and exfiltrated supports the inference that Defendant's security measures were inadequate.

38. As a direct and proximate result of Defendant's failures, Plaintiff and Class members have lost control over sensitive identification information that they reasonably entrusted to Defendant and have been exposed to an ongoing and heightened risk of identity theft, fraud, impersonation, and other misuse of their information.

### C. Defendant Acquires, Collects, and Stores Plaintiff's and Class Member's Private Information

39. In the ordinary course of business, Defendant collects, receives, stores, and maintains sensitive Private Information, including that of Plaintiff and Class members.

40. The Private Information collected and maintained by Defendant includes information that is highly sensitive and valuable to cybercriminals. Defendant derives substantial economic benefit from collecting, storing, and using this information in connection with its business operations and services.

41. Defendant could not effectively conduct its business without collecting and maintaining the Private Information from Plaintiff and Class members.

42. By collecting, storing, and maintaining the Private Information of Plaintiff and Class members, Defendant assumed legal and equitable duties to safeguard and protect that information from unauthorized access, disclosure, and misuse.

43. Defendant knew or should have known that Plaintiff and Class members entrusted Defendant with their Private Information with the reasonable expectation that it would be kept confidential, used only for legitimate business purposes, and protected through reasonable and adequate cybersecurity measures.

44. Plaintiff and Class members took reasonable steps to protect the confidentiality of their Private Information and relied on Defendant to implement appropriate administrative, technical, and physical safeguards to secure their information.

45. The Data Breach was foreseeable and preventable. Defendant could have prevented or materially reduced the risk of the Data Breach by implementing reasonable cybersecurity measures, including adequately securing and encrypting systems and databases containing Plaintiff's and Class members' Private Information.

46. Defendant's failure to adequately safeguard Plaintiff's and Class members' Private Information was exacerbated by the well-known and increasing risk of cyberattacks, as well as repeated public warnings, industry guidance, and regulatory alerts concerning the need to protect sensitive personal information from unauthorized access and disclosure.

### D. The Value of Private Information and the Effects of Unauthorized Disclosure

47. Defendant is aware that the Private Information which it acquires is highly sensitive and of significant value to those who would use it for wrongful, nefarious purposes.

48. Defendant also knew that a breach of its computer systems, and exposure of the Private Information therein, would result in the increased risk of identity theft and fraud against the individuals whose Private Information was compromised.

49. The Private Information of individuals remains of high value to criminals, as evidenced by the prices they will pay through the dark web.

50. Numerous sources cite dark web pricing for stolen identity credentials.[7]

---

[7] Digital Trends, Your personal data is for sale on the dark web. Here's how much it costs (Oct. 16, 2019), *available at* https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs/ (last visited Oct. 26, 2026).

For example, Private Information can be sold at a price ranging from $40 to $200.[8] Criminals can also purchase access to entire company data breaches from $900 to $4,500.[9]

51. Identity thieves use stolen Private Information for a variety of crimes, including credit card fraud, phone or utilities fraud, tax fraud, insurance fraud, extortion, and bank/finance fraud.

52. Among other forms of fraud, identity thieves may obtain driver's licenses, government benefits, medical services, and housing or even give false information to police.

53. Victims of identity theft also often suffer embarrassment, extortion, or harassment in person or online, and/or experience financial losses resulting from fraudulently opened accounts or misuse of existing accounts.

54. Moreover, the fraudulent activity resulting from the Data Breach may not come to light for years. There may be a time lag between when harm occurs versus when it is discovered, and also between when Private Information is stolen

---

8 Experian, Here's How Much Your Personal Information Is Selling for on the Dark Web (Dec. 6, 2017), *available at* https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/ (last visited Oct. 26, 2026).

9 VPNOverview, In the Dark (2019), *available at* https://vpnoverview.com/privacy/anonymous-browsing/in-the-dark/ (last visited Oct. 26, 2026).

and when it is used. According to the U.S. Government Accountability Office ("GAO") , which conducted a study regarding data breaches:[10]

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.

**E. Defendant Failed to Comply with Regulatory Requirements and Standards**

55. Federal and state regulators have established security standards, issued guidance, and enacted laws governing the protection of sensitive personal information in order to prevent data breaches and mitigate the resulting harm to consumers.

56. Numerous federal and state laws, regulations, and industry standards require businesses that own, license, collect, store, or maintain Private Information to implement and maintain reasonable security procedures and practices designed to protect such information from unauthorized access, disclosure, and misuse.

57. For example, at least twenty-four states have enacted laws specifically requiring entities maintaining the Private Information of state residents to employ reasonable safeguards and security measures to protect that information.

---

[10] U.S. Gov't Accountability Office, Report to Congressional Requesters at 29 (Jun. 2007), *available at* https://www.gao.gov/assets/gao-07-737.pdf (last visited Oct. 26, 2026).

58. The Federal Trade Commission ("FTC") has promulgated numerous guides for businesses which highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be a factor in all business decision-making.

59. In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established cyber-security guidelines for businesses. The guidelines note that businesses should protect the personal customer information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct any security problems.[11] The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone is attempting to hack the system; watch for large amounts of data being transmitted from the system; and, have a response plan ready in the event of a breach.[12]

[11] FEDERAL TRADE COMMISSION, Protecting Personal Information: A Guide for Business (Oct. 2016), *available at* https://www.ftc.gov/business-guidance/resources/protecting-personal-information-guide-business (last visited Oct. 26, 2026).

[12] *Id.*

60. The FTC further recommends that companies not maintain Private Information longer than necessary for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

61. The FTC also directs businesses to provide immediate notification to individuals impacted by a data breach so that they can take measures to protect themselves.

62. Here, Defendant has acted inexcusably by failing to provide timely notice to the individuals whose Private Information was compromised in the Data Breach, despite its knowledge of the incident and its obligations to safeguard such information.

63. Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to consumers' Private Information constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

64. Defendant was at all times fully aware of its obligation to protect the Private Information entrusted to it. Defendant was also aware of the significant repercussions that would result from the failure to do so.

**F. Defendant Failed to Comply with Industry Practices**

65. Various widely recognized cybersecurity industry best practices have been established to guide organizations in protecting sensitive data and mitigating the risk of unauthorized access and data breaches. For example, the Center for Internet Security ("CIS") has promulgated its Critical Security Controls, which identify common and prevalent cyber threats facing organizations and recommend baseline safeguards designed to defend against such threats. Organizations that collect and maintain sensitive Private Information, including Defendant, are widely recognized as being expected to follow such controls.

66. CIS also publishes CIS Benchmarks, which are widely used by auditors and security professionals as industry standards for securely configuring systems and establishing secure build practices for governance and cybersecurity programs.

67. Additional best practices include, at a minimum, implementing secure configuration of software and systems, maintaining robust access controls, timely identification and remediation of vulnerabilities, maintaining secure network infrastructure, encrypting sensitive data both at rest and in transit, and securing application software and related environments.

68. Defendant failed to follow these widely accepted cybersecurity standards and industry best practices, thereby failing to adequately protect the Private Information of Plaintiff and Class members.

### G. Defendant Failed to Comply with HIPAA Guidelines

69. Defendant is a covered entity under HIPAA (45 C.F.R. § 160.102) and is required to comply with the HIPAA Privacy Rule and Security Rule, 45 C.F.R. Part 160 and Part 164, Subparts A and E ("Standards for Privacy of Individually Identifiable Health Information"), and Security Rule ("Security Standards for the Protection of Electronic Protected Health Information"), 45 C.F.R. Part 160 and Part 164, Subparts A and C.

70. Defendant is subject to the rules and regulations for safeguarding electronic forms of medical information pursuant to the Health Information Technology Act ("HITECH").[13] *See* 42 U.S.C. §17921, 45 C.F.R. § 160.103.

71. HIPAA's Privacy Rule or Standards for Privacy of Individually Identifiable Health Information establishes national standards for the protection of health information.

72. HIPAA's Privacy Rule or Security Standards for the Protection of Electronic Protected Health Information establishes a national set of security standards for protecting health information that is kept or transferred in electronic form.

---

13 HIPAA and HITECH work in tandem to provide guidelines and rules for maintaining protected health information. HITECH references and incorporates HIPAA.

73. HIPAA requires "compl[iance] with the applicable standards, implementation specifications, and requirements" of HIPAA "with respect to electronic protected health information." 45 C.F.R. § 164.302.

74. HIPAA's Security Rule requires Defendant to do the following:

a. Ensure the confidentiality, integrity, and availability of all electronic protected health information the covered entity or business associate creates, receives, maintains, or transmits;

b. Protect against any reasonably anticipated threats or hazards to the security or integrity of such information;

c. Protect against any reasonably anticipated uses or disclosures of such information that are not permitted; and

d. Ensure compliance by its workforce.

75. HIPAA also requires Defendant to "review and modify the security measures implemented … as needed to continue provision of reasonable and appropriate protection of electronic protected health information." 45 C.F.R. § 164.306(e). Additionally, Defendant is required under HIPAA to "[i]mplement technical policies and procedures for electronic information systems that maintain electronic protected health information to allow access only to those persons or software programs that have been granted access rights." 45 C.F.R. § 164.312(a)(1).

76. HIPAA and HITECH also obligated Defendant to implement policies and procedures to prevent, detect, contain, and correct security violations, and to protect against uses or disclosures of electronic protected health information that are

reasonably anticipated but not permitted by the privacy rules. *See* 45 C.F.R. § 164.306(a)(1) and § 164.306(a)(3); *see also* 42 U.S.C. §17902.

77. The HIPAA Breach Notification Rule, 45 C.F.R. §§ 164.400-414, requires Defendant to provide notice of the Data Breach to each affected individual "without unreasonable delay and in no case later than 60 days following discovery of the breach."[14]

78. HIPAA requires a covered entity to have and apply appropriate sanctions against members of its workforce who fail to comply with the privacy policies and procedures of the covered entity or the requirements of 45 C.F.R. Part 164, Subparts D or E. *See* 45 C.F.R. § 164.530(e).

79. HIPAA requires a covered entity to mitigate, to the extent practicable, any harmful effect that is known to the covered entity of a use or disclosure of protected health information in violation of its policies and procedures or the requirements of 45 C.F.R. Part 164, Subpart E by the covered entity or its business associate. *See* 45 C.F.R. § 164.530(f).

80. HIPAA also requires the Office of Civil Rights ("OCR"), within the Department of Health and Human Services ("HHS"), to issue annual guidance documents on the provisions in the HIPAA Security Rule. See 45 C.F.R. §§ 164.302-

---

[14] Breach Notification Rule, U.S. Dep't of Health & Human Services, *available at* https://www.hhs.gov/hipaa/for-professionals/breach-notification/index.html.

164.318. For example, "HHS has developed guidance and tools to assist HIPAA covered entities in identifying and implementing the most cost effective and appropriate administrative, physical, and technical safeguards to protect the confidentiality, integrity, and availability of e-PHI and comply with the risk analysis requirements of the Security Rule." US Department of Health & Human Services, Security Rule Guidance Material.[15] The list of resources includes a link to guidelines set by the National Institute of Standards and Technology (NIST), which OCR says "represent the industry standard for good business practices with respect to standards for securing e-PHI." US Department of Health & Human Services, Guidance on Risk Analysis.[16]

**H. Plaintiff's Experiences**

81. At all times relevant, Plaintiff received medical services from Defendant.

82. Upon information and belief, Defendant maintained Plaintiff's Private Information in its systems at the time of the Data Breach.

83. Defendant used Plaintiff's Private Information to facilitate its business.

---

15 Security Rule Guidance Material, U.S. Dep't of Health and Human Services, *available at* http://www.hhs.gov/hipaa/for-professionals/security/guidance/index.html.

16 Guidance on Risk Analysis, U.S. Dep't of Health and Human Services, *available at* https://www.hhs.gov/hipaa/for-professionals/security/guidance/guidance-risk-analysis/index.html.

84. Plaintiff provided his Private Information to Defendant, either directly or indirectly, and trusted Defendant would use reasonable measures to protect it according to Defendant's internal policies, as well as state and federal law. Defendant obtained and continues to maintain Plaintiff's Private Information and has a continuing legal duty and obligation to protect that Private Information from unauthorized access and disclosure.

85. In collecting and maintaining Plaintiff's Private Information, Defendant undertook a duty to act reasonably in its handling of Plaintiff's Private Information. Defendant, however, did not take reasonable care of Plaintiff's Private Information, leading to its exposure and compromise as a direct result of Defendant's inadequate data security measures.

86. Plaintiff reasonably understood that Defendant would provide adequate cybersecurity and protection of their Private Information.

87. Plaintiff is very careful about sharing his sensitive Private Information. Plaintiff stores any documents containing Private Information in safe and secure locations. Plaintiff has never knowingly transmitted unencrypted sensitive Private Information over the internet or any other unsecured source.

88. Plaintiff provided Private Information to Defendant, either directly or indirectly, with the reasonable expectation and mutual understanding that Defendant

would use reasonable measures to protect that Private Information, in accordance with state and federal law and industry best practices.

89. Since learning of the Data Breach, Plaintiff has been required to spend valuable time and effort taking steps to avoid potential scams attempting to gain access to their accounts and mitigate the risk of misuse of his Private Information. Specifically, Plaintiff has been required to spend time and effort monitoring financial and credit accounts for potential fraud and identity theft. Plaintiff would not have had to engage in these efforts but for the Data Breach.

90. Plaintiff has suffered actual injury from having his Private Information exposed as a result of the Data Breach, including: (a) mitigation efforts to prevent scammers accessing bank and credit card accounts; (b) mitigation efforts to prevent the misuse of his Private Information; (c) damages to and diminution of the value of his Private Information, a form of intangible property that loses value when it falls into the hands of criminals who are using that information for fraud and publishing the information on the dark web; and (d) loss of privacy.

91. Once an individual's Private Information is offered for sale or otherwise made accessible on the Dark Web, cybercriminals can use the stolen and compromised Private Information to obtain additional personal information about

the affected individuals and facilitate further identity theft, fraud, and other criminal activity.[17]

92. Given the sensitive nature of the information compromised in the Data Breach and the propensity of criminals to use such information to commit a wide variety of crimes, Plaintiff faces a significant, present, and ongoing risk of scams, identity theft and fraud, and other identity-related fraud now and into the indefinite future.

93. In addition, knowing that hackers have gained access to Plaintiff's Private Information and that this information likely has been and will be used in the future for scams, identity theft, fraud, and other nefarious purposes has caused Plaintiff to experience significant frustration, anxiety, worry, stress, and fear.

**I. Plaintiff and Class Members Suffered Damages**

94. Given the sensitivity of the Private Information involved in this Data Breach, Plaintiff and Class members have all suffered damages and will face a substantial risk of additional injuries for years to come, if not the rest of their lives. Defendant has done nothing to compensate Plaintiff or Class members for many of the injuries they have already suffered. Defendant has not demonstrated any efforts

---

[17] Ryan Toohil, What do Hackers do with Stolen Information, AURA (Sept. 5, 2023), *available at* https://www.aura.com/learn/what-do-hackers-do-with-stolen-information (last visited Oct. 26, 2026).

to prevent additional harm from befalling Plaintiff and Class members as a result of the Data Breach.

95. Plaintiff's and Class members' Private Information was compromised as a direct and proximate result of the Data Breach.

96. Plaintiff and Class members have been damaged by the compromise of their Private Information in the Data Breach.

97. As a direct and proximate result of Defendant's conduct, Plaintiff and Class members have been placed at a present, imminent, immediate, and continuing increased risk of harm from fraud and identity theft.

98. As a direct and proximate result of Defendant's conduct, Plaintiff and Class members have been forced to spend time dealing with the effects of the Data Breach.

99. Plaintiff and Class members face substantial risk of out-of-pocket fraud losses such as loans opened in their names, tax return fraud, utility bills opened in their names, credit card fraud, and similar identity theft.

100. Plaintiff and Class members face substantial risk of being targeted for future phishing, data intrusion, and other illegal schemes based on Plaintiff's and Class members' Private Information as potential fraudsters could use that information to more effectively target such schemes to Plaintiff and Class members.

101. Plaintiff and Class members may also incur out-of-pocket costs for protective measures such as credit monitoring fees, credit report fees, credit freeze fees, and similar costs directly or indirectly related to the Data Breach.

102. Plaintiff and Class members also suffered a loss of value of their Private Information when it was compromised by cyber thieves in the Data Breach. Numerous courts have recognized the propriety of loss of value damages in similar cases.

103. Plaintiff and Class members have spent and will continue to spend significant amounts of time monitoring their accounts and sensitive information for misuse.

104. Plaintiff and Class members have suffered or will suffer actual injury as a direct result of the Data Breach. Many victims suffered ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the Data Breach relating to:

a. Reviewing and monitoring sensitive accounts and finding fraudulent insurance claims, loans, and/or government benefits claims;

b. Purchasing credit monitoring and identity theft prevention;

c. Placing “freezes” and “alerts” with reporting agencies;

d. Spending time on the phone with or at financial institutions, healthcare providers, and/or government agencies to dispute unauthorized and fraudulent activity in their name;

e. Contacting financial institutions and closing or modifying

financial accounts; and

f. Closely reviewing and monitoring bank accounts, and credit reports for unauthorized activity for years to come.

105. Moreover, Plaintiff and Class members have an interest in ensuring that his Private Information, which is believed to remain in the possession of Defendant, is protected from further breaches by the implementation of security measures and safeguards, including but not limited to, making sure that the storage of data or documents containing Private Information is not accessible and that access to such data is password protected.

106. Further, as a result of Defendant's conduct, Plaintiff and Class members are forced to live with the anxiety that their Private Information may be disclosed to the entire world, thereby subjecting them to embarrassment and depriving them of any right to privacy whatsoever.

107. As a direct and proximate result of Defendant's actions and inactions, Plaintiff and Class members have suffered anxiety, emotional distress, loss of time, loss of privacy, and are at an increased risk of future harm.

## V. CLASS ACTION ALLEGATIONS

108. Plaintiff bring this nationwide class action individually and on behalf of all other persons similarly situated pursuant to Federal Rule of Civil Procedure 23(a) and 23(b).

109. The Class that Plaintiff seeks to represent is defined as follows:

> **All individuals residing in the United States whose Private Information may have been compromised in the Data Breach (the "Class").**

110. Excluded from the proposed Class are Defendant, its subsidiaries and affiliates, officers, directors, and members of its officers' and directors' immediate families, any entity in which Defendant has a controlling interest, the legal representatives, heirs, successors, or assigns of any such excluded party, the judicial officer(s) to whom this action is assigned, and the members of those judicial officers' immediate families.

111. Plaintiff reserves the right to modify or amend the definition of the proposed Class prior to moving for class certification.

112. **Numerosity.** The Class described above is so numerous that joinder of all individual members in one action would be impracticable. The disposition of the individual claims of the respective Class members through this class action will benefit both the parties and this Court. The exact size of the Class and the identities of the individual members thereof are ascertainable through Defendant's records, including, but not limited to, the files implicated in the Data Breach. Upon information and belief, the Class, at minimum, comprises potentially hundreds of thousands of individuals.

113. **Commonality.** This action involves questions of law and fact that are common to

Plaintiff and the Class members. Such common questions include, but are not limited to:

- whether and to what extent Defendant had a duty to protect the Private Information of Plaintiff and Class members;
- whether Defendant was negligent in collecting and storing Plaintiff's and Class members' Private Information;
- whether Defendant had duties not to disclose the Private Information of Plaintiff and Class members to unauthorized third parties;
- whether Defendant took reasonable steps and measures to safeguard Plaintiff's and Class members' Private Information;
- whether Defendant failed to adequately safeguard the Private Information of Plaintiff and Class members;
- whether Defendant breached its duties to exercise reasonable care in handling Plaintiff's and Class members' Private Information;
- whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;
- whether Plaintiff and Class members are entitled to damages as a result of Defendant's wrongful conduct; and
- whether Plaintiff and Class members are entitled to injunctive relief to redress the imminent and currently ongoing harm faced as a result of the Data Breach.

114. **Typicality.** Plaintiff's claims are typical of the claims of the Class members. The claims of Plaintiff and Class members are based on the same legal theories and arise from the same failure by Defendant to safeguard their Private

Information. Plaintiff and Class members entrusted Defendants with their Private Information, and it was subsequently accessed by an unauthorized third party.

115. **Adequacy of Representation.** Plaintiff is an adequate representatives of the proposed Class because Plaintiff's interests do not conflict with the interests of the other Class members Plaintiff seeks to represent; Plaintiff has retained counsel competent and experienced in complex class action litigation; Plaintiff intends to prosecute this action vigorously; and Plaintiff's counsel has adequate financial means to vigorously pursue this action and ensure the interests of the proposed Class will not be harmed. Furthermore, the interests of the Class members will be fairly and adequately protected and represented by Plaintiff and Plaintiff's counsel.

116. **Superiority.** This class action is appropriate for certification because class proceedings are superior to other available methods for the fair and efficient adjudication of this controversy and joinder of all members of the proposed Class is impracticable. This proposed class action presents fewer management difficulties than individual litigation, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Class treatment will create economies of time, effort, and expense and promote uniform decision-making.

117. **Predominance.** Common questions of law and fact predominate over any questions affecting only individual Class members. Similar or identical violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action. For example, Defendants' liability and the fact of damages is common to Plaintiff and each member of the proposed Class. If Defendant's breached its duties and released Plaintiff's and Class members' Private Information, then Plaintiff and each Class member suffered damages by that conduct.

118. **Ascertainability:** Members of the proposed Class are ascertainable. Class membership is defined using objective criteria, and Class members may be readily identified through Defendants' books and records.

## VI. CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
### NEGLIGENCE
### (On Behalf of Plaintiff and the Class)

119. Plaintiff restates and realleges all preceding allegations above as if fully set forth herein.

120. Defendant owed a duty under common law to Plaintiff and Class members to exercise reasonable care in obtaining, retaining, securing, safeguarding,

deleting, and protecting their Private Information in Defendant's possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons.

121. Specifically, this duty included, among other things: (a) designing, maintaining, and testing Defendant's computer systems to ensure that Plaintiff's and Class members' Private Information in Defendant's possession was adequately secured and protected; (b) implementing processes that would detect a breach of their security system in a timely manner; (c) timely acting upon warnings and alerts, including those generated by their own security systems, regarding intrusions to their networks; and (d) maintaining data security measures consistent with industry standards.

122. Defendant's duty to use reasonable care arose from several sources, including, but not limited to, those described below.

123. Defendant had a common law duty to prevent foreseeable harm to others. This duty existed because Plaintiff and Class members were the foreseeable and probable victims of any inadequate security practices on the part of Defendant. By collecting and storing valuable Private Information that is routinely targeted by criminals for unauthorized access, Defendant was obligated to act with reasonable care to protect against these foreseeable threats.

124. Defendant also owed a common law duty because their conduct created a foreseeable risk of harm to Plaintiff and Class members. Defendant's

conduct included their failure to adequately restrict access to their computer networks and/or servers that held individuals' Private Information.

125. Defendant also knew or should have known of the inherent risk in collecting and storing massive amounts of Private Information, the importance of implementing adequate data security measures to protect that Private Information, and the frequency of cyber-attacks, such as the Data Breach.

126. Defendant breached its duties owed to Plaintiff and Class members and thus was negligent. Upon information and belief, Defendant breached these duties by, among other things: (a) mismanaging their system and failing to identify reasonably foreseeable internal and external risks to the security, confidentiality, and integrity of customer information that resulted in the unauthorized access and compromise of Private Information; (b) mishandling its data security by failing to assess the sufficiency of their safeguards in place to control these risks; (c) failing to design and implement information safeguards to control these risks; (d) failing to adequately test and monitor the effectiveness of the safeguards' key controls, systems, and procedures; (e) failing to evaluate and adjust their information security program in light of the circumstances alleged herein; (f) failing to detect the breach at the time it began or within a reasonable time thereafter; (g) failing to follow its own privacy policies; and (h) failing to adequately train and supervise employees

and third-party vendors with access or credentials to systems and databases containing sensitive Private Information.

127. But for Defendant's wrongful and negligent breach of its duties owed to Plaintiff and Class members, their Private Information would not have been accessed and compromised by cybercriminals.

128. As a direct and proximate result of Defendant's negligence, Plaintiff and Class members have suffered injuries including:

a. theft of their Private Information;

b. costs associated with requesting credit freezes;

c. costs associated with the detection and prevention of identity theft;

d. costs associated with purchasing credit monitoring and identity theft protection services;

e. lowered credit scores resulting from credit inquiries following fraudulent activities;

f. costs associated with time spent and the loss of productivity from taking time to address and attempt to ameliorate, mitigate, and deal with the actual and future consequences of the Data Breach;

g. the imminent and certainly impending injury flowing from potential fraud and identity theft posed by their Private Information being placed in the hands of criminals;

h. damages to and diminution in value of their Private Information entrusted to Defendants with the mutual understanding that Defendant would safeguard Plaintiff's and Class members' data against theft and not allow access and misuse of their data by others; and

i. continued risk of exposure to hackers and thieves of their Private Information, which remains in Defendant's possession and is subject to further breaches so long as Defendant fails to undertake appropriate and adequate measures to protect Plaintiff and Class members.

129. As a direct and proximate result of Defendant's negligence, including its gross negligence, Plaintiff and Class members are entitled to damages, including compensatory, punitive, and/or nominal damages, in an amount to be proven at trial.

## SECOND CLAIM FOR RELIEF
## UNJUST ENRICHMENT
## (On Behalf of Plaintiff and the Class)

130. Plaintiff restates and realleges all preceding allegations above as if fully set forth herein.

131. Plaintiff and Class members conferred a monetary benefit on Defendant by providing it with their valuable Private Information.

132. Defendant knew that Plaintiff and Class members conferred a benefit upon it and accepted and retained that benefit by accepting and retaining the Private Information entrusted to it. Defendant profited from Plaintiff's and Class members' Private Information and use of Plaintiff's and Class members' Private Information for business purposes.

133. Defendant failed to secure Plaintiff's and Class members' Private Information and, therefore, did not fully compensate Plaintiff or Class members for the value that their Private Information provided.

134. Defendant acquired the Private Information through inequitable record retention as it failed to disclose the inadequate data security practices previously alleged.

135. If Plaintiff and Class members had known Defendant would not use adequate data security practices, procedures, and protocols to adequately monitor, supervise, and secure their Private Information, they would not have agreed to the entrustment of their Private Information to Defendant.

136. Under the circumstances, it would be unjust for Defendant to be permitted to retain any of the benefits that Plaintiff and Class members conferred upon Defendant.

137. Plaintiff and Class members are without an adequate remedy at law.

138. As a direct and proximate result of Defendant's conduct, Plaintiff and Class members have suffered injuries, including those identified above.

139. Plaintiff and Class members are entitled to restitution and/or damages from Defendant and/or an order proportionally disgorging all profits, benefits, and other compensation obtained by Defendant from its wrongful conduct, as well as return of their sensitive Private Information and/or confirmation that it is secure. This can be accomplished by establishing a constructive trust from which the Plaintiff and Class members may seek restitution or compensation.

**THIRD CLAIM FOR RELIEF**
**BREACH OF IMPLIED CONTRACT**
**(On Behalf of Plaintiff and the Class)**

140. Plaintiff restates and realleges all preceding allegations above as if fully set forth herein.

141. Plaintiff and Class members entrusted their Private Information to Defendant either directly or indirectly in connection with the services Defendant provides. In so doing, Plaintiff and the Class entered into implied contracts with Defendant, pursuant to which Defendant agreed to safeguard and protect Plaintiff's and Class members' Private Information, to keep such information secure and confidential, and to timely and accurately notify Plaintiff and the Class if their data had been breached or otherwise compromised.

142. At the time Defendant acquired the Private Information of Plaintiff and the Class, there was a meeting of the minds and a mutual understanding that Defendant would safeguard the Private Information and not take unjustified risks when storing the Private Information.

143. Implicit in the agreements between Plaintiff and Class members and Defendant was Defendant's obligations to: (a) use Plaintiff and Class members' Private Information for business purposes only; (b) take reasonable steps to safeguard their Private Information; (c) prevent unauthorized access and disclosure of the Private Information; (d) provide Plaintiff and Class members with prompt

and sufficient notice of any and all unauthorized access and/or theft of their Private Information; and (e) retain the Private Information only under conditions that kept such information secure and confidential.

144. Plaintiff and Class members would not have entrusted their Private Information to Defendant had they known that Defendant would not encrypt sensitive data elements, or delete the Private Information that Defendants no longer had a reasonable need to maintain.

145. Plaintiff and Class members fully performed their obligations under the implied contracts with Defendant.

146. Defendant breached the implied contracts it made with Plaintiff and Class members by failing to safeguard and protect their Private Information, by failing to delete the information of Plaintiff and Class members once the relationship ended, and by failing to provide timely and accurate notice to them that their Private Information had been compromised in the Data Breach.

147. As a direct and proximate result of Defendant's above-described breach of implied contract, Plaintiff and Class members have already suffered, and will continue to suffer, damages including, inter alia: (i) invasion of privacy; (ii) the compromise of their Private Information; (iii) actual and attempted misuse of the Private Information compromised in the Data Breach, including an increase in spam and phishing calls, texts, and emails; (iv) lost time, money, and opportunity costs

associated with attempts to mitigate the actual consequences of the Data Breach; (v) lost or diminished value of their Private Information; (vi) loss of the benefit of their bargain; (vii) nominal damages; and (viii) the increased and continuing risk to their Private Information, which: (a) remains unencrypted and vulnerable to unauthorized access and abuse; and (b) remains backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information.

148. Plaintiff and Class members have suffered (and will continue to suffer): an ongoing and imminent threat of future identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; actual and attempted identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; loss of the confidentiality of their Private Information; the illegal sale of the compromised data on the dark web; expenses and/or time spent on credit monitoring and identity theft insurance; time spent scrutinizing bank statements, credit card statements, and credit reports; expenses and/or time spent initiating fraud alerts, lost work time; and other economic and non-economic harm.

149. As a direct and proximate result of Defendant's above-described breach of implied contract, Plaintiff and Class members are entitled to recover actual, consequential, and nominal damages to be determined at trial.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, pray for relief as follows:

A. For an order certifying the proposed Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class and Plaintiff's attorneys as Class Counsel to represent the Class;

B. For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

C. For damages in an amount to be determined by the trier of fact;

D. For an order of restitution and all other forms of equitable monetary relief;

E. Declaratory and injunctive relief as described herein;

F. Awarding Plaintiff reasonable attorneys' fees, costs, and expenses;

G. Awarding pre- and post-judgment interest on any amounts awarded; and

H. Awarding such other and further relief as may be just and proper.

## VIII. JURY TRIAL DEMANDED

Plaintiff hereby demands a jury trial for all claims so triable.

Dated: October 26, 2026 Respectfully submitted,

*/s/ James E. Cecchi*
James E. Cecchi
**CARELLA BYRNE CECCHI BRODY & AGNELLO P.C.**
5 Becker Farm Road
Roseland, NJ, 07068-1739
Telephone: 973-994-1700
Email: jcecchi@carellabyrne.com

Linda P. Nussbaum (*pro hac vice* forthcoming)
**NUSSBAUM LAW GROUP, P.C.**
1225 Franklin Avenue, Suite 500
Garden City, NY 11530
Telephone: (917) 438-9189
Email: lnussbaum@nussbaumpc.com

Michele S. Carino
**GREENWICH LEGAL ASSOCIATES LLC**
881 Lake Avenue
Greenwich, CT 06831
Telephone: (203) 629-4900
Email: mcarino@grwlegal.com

*Attorneys for Plaintiff and the Proposed Class*